

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ricky J Johnson, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:06-03247-HFF-BM |
| | ) | |
| v. | ) | |
| | ) | |
| Greenville County, Officer Chris | ) | **REPORT AND RECOMMENDATION** |
| Hefner Corporal, John Couch, | ) | |
| Sergeant, Scott Bodiford, James | ) | |
| Dorriety County Administrator, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate at the Greenville County Detention Center[1], alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 2, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 6, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on April 9, 2007.

---

[1] Plaintiff is currently incarcerated at the Hall County Detention Center in Gainesville, Georgia.

1

Defendants' motion is now before the Court for disposition.[2]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[3] that on August 2, 2006 he was walking to a sink at the Detention Center when the Defendant Hefner, a corporal at the Detention Center, told him to "get against the wall" along with fifteen or twenty other inmates. Plaintiff alleges that Hefner stated that he smelled cigarette smoke, and that he then sniffed the Plaintiff again saying that he smelled cigarette smoke. Plaintiff alleges that Hefner then took him into a multipurpose room and told him he [Hefner] was going to strip search him. Plaintiff was then escorted to the unit restroom and was told to take off his clothes. Plaintiff alleges that when he objected, Hefner told him "we can do this the hard way at the red pod (disciplinary unit) or the easy way right there." Plaintiff alleges that he then complied, that the search included a cavity search, and that during this search he was inappropriately touched by Hefner.

Plaintiff alleges that he returned to his cell and asked the Defendant Couch, a sergeant, whether he had authorized Hefner to preform a strip and cavity search on him, and that Couch replied that "if a reasonable suspicion existed he could do that." Plaintiff alleges that while

---

[2]This case was originally referred to the Honorable William M. Catoe, United States Magistrate Judge, for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The case was subsequently reassigned to the undersigned United States Magistrate Judge on May 30, 2007; however, notice of this reassignment was only received by the undersigned Magistrate Judge on February 20, 2008. As the Defendants have filed a dispositive motion, this Report and Recommendation has been entered by the undersigned for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



he was talking to Couch another guard came up (Officer Stone), looked at his wrist band which was marked "SS",[4] and that he and Couch then laughed. Plaintiff also complained that someone else should have been in the bathroom during the strip search, but that Couch said that that was not required. Couch also stated that he had nothing to do with what went on in the bathroom.

Plaintiff alleges that he was only a pretrial detainee, that he had not been convicted of anything, and that he believes his rights were violated. Plaintiff seeks monetary damages, injunctive and/or declaratory relief, as well as that the Defendant Hefner "be charged with sexual assault". See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant Dorriety has submitted an affidavit wherein he attests that he is the Administrator of the Greenville County Detention Center. Dorriety attests that Plaintiff was arrested on April 24, 2006 on theft and drug charges. Plaintiff also had an outstanding fugitive warrant from Hall County, Georgia. Dorriety attests that the smuggling of contraband such as drugs and/or cigarettes is a common occurrence at the Greenville County Detention Center, and that because of the continued problem with contraband and the threat contraband places on Detention Center security, any inmate may be strip searched when there is a clear or reasonable suspicion that an inmate is concealing contraband pursuant to Greenville County Detention Center Policy No. 3.1.17, Procedure Section, ¶ 7.[5]

The Detention Center's strip search procedure requires the removal of all clothing, with the officer then visually examining the clothing and all areas of the body that could possibly

---

[4]Plaintiff alleges in his Complaint that inmates are either labeled "SS" for strip search, or "FS" for feel search, which is a classification system that has been devised by the Defendants Bodiford (the Jail Administrator) and Dorriety (the Assistant Public Safety Director).

[5]A copy of this policy has not been provided to the Court.

3



be used to conceal weapons or other contraband. Dorriety attests that searches of inmates are performed in a manner so as to avoid intentional embarrassment, and are therefore performed in private to protect inmate privacy rights.

Dorriety attests that at no time did Plaintiff complain to him about a search performed by the Defendant Hefner, nor has Plaintiff ever filed a grievance stemming from this alleged search. Dorriety further attests that during the time period surrounding this alleged search, Plaintiff made no medical or mental health complaints, including during a medical screening on August 29, 2006, and that he did not mention being assaulted by an officer as a result of a strip and cavity search until November 3, 2006, when he was receiving a mental health evaluation. See generally, Dorriety Affidavit.

The Defendant Bodiford has submitted an affidavit wherein he attests that he is the Jail Administrator at the Greenville County Detention Center. Bodiford attests that during the intake process inmates are classified as "strip search" if they have unresolved arrests involving weapons, drugs and other contraband, and that since Plaintiff was detained on drug charges he was classified as "strip search". Bodiford attests that because of the continued problem with contraband and the threat that contraband places on Detention Center security, any inmate may be strip searched when there is a clear or reasonable suspicion that an inmate is concealing contraband, citing to Detention Center Policy No. 3.1.17, Procedure Section, ¶ 7. Strip searches involve an officer visually examining the clothing and all areas of the body that could possible be used to conceal weapons or other contraband. Bodiford attest that such searches are performed in private to protect an inmate's privacy rights and to avoid potential embarrassment.

Bodiford further attests that Plaintiff never complained to him about a search

4



performed by the Defendant Hefner, nor has Plaintiff ever filed a grievance stemming from this alleged search. Bodiford attests that he has reviewed the reports relating to the search at issue, and that he believes the search was performed based on Hefner's reasonable suspicion that Plaintiff was concealing contraband, and that the search at issue was performed in accordance with Detention Center policies. See generally, Bodiford Affidavit.

The Defendant Couch has submitted an affidavit wherein he attests that he is a sergeant at the Detention Center, and that on August 2, 2006 he was the Defendant Hefner's supervisor. Couch attests that he is aware that as a result of a clear and reasonable suspicion by Hefner that Plaintiff had contraband, Plaintiff was strip searched in conformity with Detention Center polices, privately and out of the sight of other inmates. Couch attests that Plaintiff discussed his having been strip searched with him [Couch] after the search had occurred, but did not make any claims of improper touching or alleged violations of policy at that time, nor is he aware of any violations by Hefner of any policies or procedures of the Detention Center relative to the search of August 2, 2006. See generally, Couch Affidavit.

Finally, the Defendant Hefner has submitted an affidavit wherein he attests that he is an officer at the Greenville County Detention Center, and that on August 2, 2006 while performing his duties he noticed a group of prisoners leaving the recreation yard and returning to the building. Hefner attests that there was a strong odor of cigarette smoke emanating from the group, and that cigarettes are contraband at the Detention Center. Hefner attests that the smell of cigarette smoke coming from the group provided him with a reasonable suspicion that one of the inmates was in possession of or had been in possession of contraband, and that as a result of this suspicion he lined up all individuals in the group and patted each individual down. Hefner attests

5



that as he patted down the Plaintiff, he smelled a heavy odor of cigarette smoke. Hefner attests that he asked Plaintiff if he had been smoking, and that Plaintiff denied having smoked cigarettes.

Hefner attests that he then took Plaintiff to the multipurpose room and asked him if he would admit to smoking, and that when Plaintiff refused he took Plaintiff to the staff bathroom to perform a search in private in accordance with Detention Center policy. Hefner attests that during the search he asked Plaintiff to take off his clothes one article at a time, and that he then checked each article for contraband. Hefner attests that he smelled the odor of cigarette smoke on Plaintiff's clothes at this time also, and that he then requested that Plaintiff put his hands through his hair and open his mouth. He also requested that Plaintiff lift his arms over his head, that he lift his genitalia, and that he bend over at the waist and pull his buttocks apart so that I could inspect his anus. Hefner attests that at no time did he ever touch the Plaintiff or insert any items into any of his body cavities. Hefner attests that he did not find evidence of contraband during this search. See generally, Hefner Affidavit.

As attachments to his response to the motion for summary judgment, Plaintiff has provided a copy of a Greenville County Detention Center request form dated August 3, 2006 and addressed to a "Sgt. Jones", wherein Plaintiff complained about being strip searched by Hefner because he [Hefner] had smelled cigarette smoke. Plaintiff states in this request form that "it was not from me." In an attachment to this request, Plaintiff asks for a copy of the GCDC policy governing these types of searches of pretrial detainees, stating that he does not like being strip searched and he would "like to clear up any confusion....". The action taken section of this form reads: "Here at GCDC we are allowed to strip search inmates based on reasonable cause. We had reasonable cause to believe contraband (cig's) was in the areas due to the smell." The form is signed



by a sergeant whose signature is illegible.

Plaintiff has also submitted copies of affidavits from several other inmates or former inmates. A John M. Ramey complains in an affidavit dated January 12, 2007 that in October 2006 he and other inmates were "frisk search[ed]", where inmates were told to place their hands on the wall in the hallway and spread their legs. Ramey states that during the search of his person, Hefner "forcefully and unnecessarily" groped him, and that he used foul language. See generally, Ramey Affidavit. Plaintiff has also submitted affidavits from two inmates who confirm that on August 2, 2006 a pat down of inmates occurred during a search for contraband, and that during that search Hefner took the Plaintiff into a bathroom, presumably for a strip search.

Plaintiff has also himself submitted two affidavits talking about an incident or dispute he had with a Scott Porter.

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the

7



pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants initially argue in their motion for summary judgment, inter alia, that this case should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[6] under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002). Accordingly, before Plaintiff may proceed with his claim in this Court, he must first have exhausted the administrative remedies that were available at the jail. See Palay v. United States, 349 F.3d 418, 425 (7th Cir. 2003) [applying exhaustion requirement to pretrial detainees].

---

[6] There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); Neal v. Goord, 267 F.3d 116 (2d Cir. Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).

8



The Fourth Circuit has held that it is the Defendant who has the burden of showing that a Plaintiff failed to exhaust his or her administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]. Here, the Defendant has submitted affidavits in which jail administrators attest that Plaintiff never filed a grievance with respect to the claim asserted in this lawsuit. While Plaintiff argues in his response memorandum that he did turn in a "502 request form" (a copy of which is attached to his memorandum) complaining about being strip searched, he essentially concedes that he did not follow or exhaust the jail grievance procedure, arguing that the grievance procedure at the jail was a "flawed" procedure, and that in any event he was too "terrified to complain too strenuously to GCDC staff....". Plaintiff also argues that he "did his best" to exhaust his grievance remedies by attempting to tell Sergeant Couch about Officer Hefner having strip searched him.

Based on the affidavits submitted by the Defendants as well as Plaintiff's own concession in his response memorandum that he did not properly exhaust the jail grievance procedures, Plaintiff's case is subject to dismissal on that basis. See Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Even if Plaintiff had completed the jail's grievance process after having filed this lawsuit, of which there is no evidence, this would still not be sufficient to save Plaintiff's claim from dismissal. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting

9



his administrative remedies, even if he exhausts those remedies while the litigation is pending.];
Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]; Erby v. Kula, 98 Fed.Appx. 405, 407 (6th Cir. 2004) [State prisoner's letter to state prison director did not exhaust his administrative remedies, as required, where prisoner sent his letter during pendency of federal suit.].

Therefore, based on the foregoing, and in light of Plaintiff's own admission that he failed to properly exhaust the jail grievance procedure prior to bringing this lawsuit, the Defendants are entitled to dismissal of Plaintiff's claim. Booth, 532 U.S. at 741; Davis v. Minthorn, No. 05-326, 2006 WL 2222700 (E.D.Tenn. Aug. 2, 2006) [Submission of inmate request form not sufficient to exhaust grievance remedy]; Jordan v. Miami-Dade County, 437 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006) [Remedies not exhausted where inmate did not appeal denial]; *cf.* Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"].

**II.**

Additionally, even if the Court were to find that Plaintiff having submitted a 502 request form questioning the jail's strip search policy constituted the filing of a "grievance" sufficient to satisfy the exhaustion requirement; see Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [following the lead of the...other circuits that have considered the issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies

10



unavailable]; his claim is still subject to dismissal.

**Non-Monetary Relief**.  First, with respect to Plaintiff's demand that Hefner be charged with sexual assault, Plaintiff cannot obtain criminal charges against a Defendant through this lawsuit. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) [a private citizen does not have judicially cognizable interest in the prosecution or non-prosecution of another person]; Collins v. Palczewski, 841 F.Supp. 333, 340 (D.Nev. 1993) ["Long ago the courts of these United States established that 'criminal statutes cannot be enforced by civil actions'"].  Hence, since Plaintiff does not have a judicially cognizable interest in the criminal prosecution of another person, he lacks standing to even raise such a claim. Linda R.S. v. Richard D., 410 U.S. at 619.  Further, to the extent Plaintiff is demanding that Hefner or any other Defendant be fired from their jobs, the federal courts are not personnel directors of state prison systems, and such relief is therefore also unattainable in this action.  See Maxton v. Johnson, 488 F.Supp. 1030, 1032, n. 2 (D.S.C. 1980), citing United States v. White County Bridge Commission, 275 F.2d 529, 535 (7th Cir.    ) [a federal district court lacks the inherent power to hire or remove officials not within the executive control of that federal district court], cert. denied sub nomine, Clippinger v. United States, 364 U.S. 818 (1960).

Also, since Plaintiff is no longer incarcerated at the Greenville County Detention Center, to the extent he has requested declaratory and/or injunctive relief, his claims are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. *Cf.* Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."];  Magee v.



Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983); Weinstein v. Bradford, 423 U.S. 147, 149 (1975).  Therefore, Plaintiff's claims for declaratory and/or injunctive relief are subject to dismissal.

**Monetary Relief**. With respect to Plaintiff's claim for monetary damages, a claim for monetary damages generally survives an inmate's transfer to another institution.  Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) [finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)]; Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Therefore, Plaintiff's claims for monetary damages in this case are not moot, and are not subject to dismissal on the grounds that Plaintiff is no longer housed at the Greenville County Detention Center.

Nevertheless, to the extent Greenville County has itself been named as a party Defendant in this case[7], in order to maintain a claim against Greenville County Plaintiff must produce evidence to show not only that his constitutional rights have been violated, but that these violations were the result of the Defendant Greenville County's policies or customs, or flowed from edicts or acts which may fairly be said to represent official county policy. Further, if Plaintiff's claim is that the actions complained of were pursuant to a custom of the County, rather than an actual policy, Plaintiff may need to make an additional showing that the County knew about the unlawful custom and condoned it.  See  Higgins v. Correctional Medical Services of Illinois, Inc., 8 F.Supp. 2d 821, 831 (N.D. Ill. 1998); Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997); Moore v. Mercier, No. 96-1445, 1997 WL 529994 at **2 (8th Cir. Aug. 7, 1997); Smith v. Prince George

---

[7]Although Greenville County is listed in the caption of Plaintiff's Complaint, it does not actually appear that Plaintiff has intended to make the County itself a party Defendant.



County Md., No. 96-2644, 1998 WL 398786 (4th Cir. July 9, 1998). See also Monell v. Dep't of Social Services, 436 U.S. 658, 690-691, 694 (1978); Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988) (citing Monell, 436 U.S. at 692-694); Greensboro Professional Firefighters, et al. v. City of Greensboro, 64 F.3d 962, 966-967 (4th Cir. 1995), (citing Spell, 824 F.2d at 1391); Addison v. County of Charleston Magistrate Office, No. 06-3308, 2006 WL 3813695 at *3 (D.S.C. Dec. 27, 2006).

> [A] plaintiff must show that a municipality itself has somehow violated federal rights. The clearest way to make such a showing is when the municipality or one of its agencies has adopted an unconstitutional policy, ordinance, regulation or decision. Absent a specific policy, liability must be premised on a municipal custom or usage so prevalent that it is the equivalent of policy. A single act or isolated incident does not provide causation sufficient to hold a county or municipality liable on the basis of custom or usage.

Nelson v. Strawn, 897 F.Supp. 252, 259 (D.S.C. 1995) aff'd in part, vacated in part on other grounds,

78 F.3d 579 (1996); see also Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994).

Plaintiff has presented no evidence, nor even made any allegations to show that Greenville County was responsible for the custom or policy at issue, or that Greenville County even had any control or jurisdiction over the Greenville County Jail.[8] Plaintiff does not mention Greenville County in his statement of claim, he otherwise makes no allegations against this entity in his Complaint, nor does he allege that any of the conduct or actions of which he complains were the result of any custom or policy of Greenville County. Therefore, to the extent Greenville County has even been intended to be named as a Defendant in this action, it is entitled to dismissal. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) [in order to maintain a claim under § 1983, a plaintiff

---

[8]The undersigned can take judicial notice that, in South Carolina, many county jails are run by, and are under the jurisdiction of, the sheriff of a county, rather than the county itself.



must show, in part, that a named Defendant deprived him or her of a federal right].

As for the remaining individual Defendants, as public employees they are generally subject to suit for damages under § 1983 in their individual capacities. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is asserting his damages claims against these Defendants in their individual capacities.[9] However, the evidence presented is not sufficient to raise a genuine issue of fact as to whether Plaintiff's constitutional rights were violated to survive summary judgment, as the constitutionality of prison officials performing strip searches on jail inmates, even pretrial detainees, is well established. Bell v. Wolfish, 441 U.S. 520, 559 (1979) [finding that body cavity searches are reasonable under the Fourth Amendment because in prisons the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence"]; see also Forbes v. Trigg, 976 F.2d 308 (7th Cir. 1992) (collecting cases), cert. denied, Trigg v. Forbes, 507 U.S. 950 (1993); Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986); Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir. 1998) [strip searches constitutional absent evidence they were performed for purposes of harassment or punishment]; Thompson v. Sauza, 111 F.3d 694, 699 (9th Cir. 1997); Franklin v. Lockhart, 883 F.2d 654 (9th Cir. 1989) [approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation]; Michenfelder v. Sumner, 860

---

[9] While neither Bodiford nor Dorriety were present during the incident in question, they could conceivably be subject to liability for the acts and conduct complained of if this conduct was the result of an official policy or custom for which these two Defendants, as jail administrators, were responsible. See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)).

14



F.2d 328, 332-333 (9th Cir. 1988) [strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next]; Amaechi v. West, 237 F.3d 356, 361 (4th Cir. 2001).

The evidence before the Court, even Plaintiff's own evidence, clearly establishes that the strip search at issue occurred as a result of a suspicion among jail officers that a prisoner possessed contraband items, and that the strip search at issue was performed in private. Further, despite Plaintiff's claim that he was inappropriately touched by the Defendant Hefner during this strip search, the request to inmate form he submitted the next day fails to make any reference to such a claim, but instead merely asks for a copy of the jail strip search policy because Plaintiff wanted to "clear up any confusion" as to whether jail officials had the right to conduct strip searches. This evidence is not sufficient to give rise to a genuine issue of fact as to whether a constitutional violation occurred. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. ) [Plaintiff must present evidence to show that "the official's act[ed] with a sufficiently culpable state of mind"], cert. denied, 510 U.S. 949 (1993); Tesch v. County of Green Lake, 157 F.3d 465, 473-474 (7th Cir. 1998) [requiring pretrial detainee bringing conditions of confinement claim to establish that defendant acted with deliberate indifference]; see Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) [explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)]; Harris v. Ostrout, 65 F.3d 912, 916

15



(11th Cir. 1995) [case dismissed where plaintiff produced nothing beyond his own conclusory allegations, suggesting that prison official's actions in compliance with strip search regulations were motivated by a retaliatory animus]; Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) [holding allegations that a corrections officer touched an inmate's penis and pressed up against him in a sexual manner were not sufficient to state an Eighth Amendment claim because "isolated episodes of harassment and touching...do not involve a harm of federal constitutional proportions as defined by the Supreme Court."].

Therefore, even if the Court were to find that Plaintiff exhausted his administrative remedies so as to allow him to bring this case, it would still be subject to dismissal.

**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

February 25, 2008

16



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

17

